IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL P. ARMIJO,

      Plaintiff,

v.                                        Case No. 1:11-cv-126 WDS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* [Doc. 18], filed November 21, 2011. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security who determined that Plaintiff is not eligible for benefits. Having considered Plaintiff's motion and memorandum [Docs. 18, 19], Defendant's response [Doc. 20], Plaintiff's reply [Doc. 21], the administrative record and applicable law, the Court concludes that Plaintiff's motion should be DENIED.

### I.  Background

Plaintiff was born February 23, 1949. Tr. 85. He has past work experience as a painter, furniture mover, day laborer, and sheetrock mover. Tr. 185, 187. He last worked in 2006 as a painter. Tr. 26.

Plaintiff applied for Disability Insurance and Supplemental Security Income on November 8, 2006. Tr. 85–93. He alleged disability due to low back problems, shoulder and knee problems, thyroid removal, and posttraumatic stress disorder (PTSD), with an onset date of July 19, 2006. Tr. 39, 85. Plaintiff's applications were denied initially, Tr. 31–32, 36–41, and on reconsideration, Tr. 33–35, 46–51.

Plaintiff requested a hearing before an administrative law judge (ALJ). Tr. 57–59. The hearing was held May 20, 2009. Plaintiff was represented by a nonattorney representative and testified at the hearing. Tr. 24–30. A vocational expert also testified. Tr. 28–29. On September 1, 2009, the ALJ issued a decision finding Plaintiff not disabled. Tr. 15–23. Plaintiff, now represented by an attorney, filed a request for review by the Appeals Council. Tr. 11. On September 14, 2010, Plaintiff's attorney submitted additional evidence to the Appeals Council in support of his disability claim. Tr. 636–43. The Appeals Council at first denied the request for review, Tr. 6–8, but then set aside its denial to consider Plaintiff's additional evidence. Tr. 1–5. After considering the additional evidence, the Appeals Council found no reason to review the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner from which Plaintiff now appeals pursuant to 42 U.S.C. § 405(g).

## II. Legal Standards

This Court may only review the Commissioner's decision to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation marks and citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quotation marks and citation omitted). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence nor should it substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118.

2

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled and entitled to benefits under the Social Security Act. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines if the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* at 750–51. If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 751. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.*

The claimant is not disabled if he or she can perform past work. *Williams*, 844 F.2d at 751. If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity (RFC) "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

3

### III.  Summary of the ALJ's Decision and Plaintiff's allegations of error

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff had severe impairments consisting of right shoulder impingement, degenerative disc disease of the lumbar spine, hypertension, and hypothyroidism.  Tr. 17.  At step three, he found Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of a listed impairment. Tr. 19.

At step four, the ALJ found that Plaintiff

...has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) that requires no more than occasional climbing of ladders, ropes and or scaffolds, no more than occasional reaching overhead with the right upper extremity, and no concentrated exposure to extreme cold or hazardous machinery, heights, etc.

Tr. 19.  The ALJ also found Plaintiff was unable to perform any past relevant work, and thus proceeded to step five where he found that Plaintiff is able to perform work that exists in significant numbers in the national economy, and is therefore not disabled.  Tr. 21–22.

Plaintiff makes the following allegations of error: (1) the ALJ failed to evaluate his evidence according to his treating physician's RFC; (2) the ALJ failed to develop the record regarding his mental disorder; (3) the ALJ erred in evaluating his pain and credibility; and (4) the ALJ's hypothetical questioning of the vocational expert did not include all functional limitations.

### IV.  Discussion

#### A.      Whether the ALJ failed to adequately address treating physician evidence

Dr. Heidi Jochem at the Veterans Administration saw Plaintiff numerous times during the alleged period of disability.  On several occasions, she filled out forms to support Plaintiff's claim

for state benefits. Tr. 626–29, 633. Plaintiff argues the ALJ did not accord proper weight to the opinions Dr. Jochem expressed in these forms.

Medical opinions from treating sources are generally entitled to more weight than nontreating sources. 20 C.F.R. § 404.1527(d)(2). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

It is undisputed that Dr. Jochem was Plaintiff's treating physician. However, some of the statements Plaintiff claims should have been given controlling weight because they were issued by Dr. Jochem do not qualify as medical opinion under the regulations. Specifically, Dr. Jochem's opinions that Plaintiff is disabled, unable to work, or to perform his previous work, Tr. 627–31, 633, do not qualify as "medical opinion" but instead are matters reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1); *see also Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

On the other hand, the ALJ fully credited Dr. Jochem's diagnoses of low back and shoulder pain, determining that these were severe impairments. Tr. 17. This fact distinguishes this case from *Krauser v. Astrue* which Plaintiff cites in his reply. In *Krauser*, the ALJ erred by rejecting the treating physician's assessment of the claimant's exertional limitations without addressing the second step of the two-step treating physician inquiry. *Krauser v. Astrue*, 638 F.3d 1324, 1330–32 (10th Cir. 2011). In this case, by contrast, the ALJ accepted Dr. Jochem's diagnosis and, consistent with her opinion, ruled out Plaintiff's past work as a work as a painter. Tr. 20, 21.

5

Plaintiff points out that on March 28, 2008, Dr. Jochem also assessed him with knee pain and ruled out lifting, and that on January 7, 2009, she diagnosed him with foot arthritis and stated he could not stand for prolonged periods.[1]  Tr. 629, 633.  The anticipated duration of each of these restrictions was only six months; they therefore do not meet the statutory definition of "disability" which requires an impairment lasting not less than twelve months.  20 C.F.R. § 404.1509; *Barnhart v. Walton*, 535 U.S. 212, 217, 122 S.C.t 1265, 1269.  The ALJ accordingly did not err by omitting them from his disability assessment.

Plaintiff also argues that the agency's initial RFC assessment and consultative exam in 2007 were performed without the benefit of the medical records he developed over the next two years. The Court fails to see how this circumstance produced error when these subsequent records were available to the ALJ when he issued his decision in September 2009.

Plaintiff argues the ALJ improperly drew speculative inferences from the medical evidence. Plaintiff apparently is referring to the following statement in the ALJ's decision:

> I am aware that the claimant's treating physician, Dr. Jochem, opined on numerous occasions that the claimant was temporarily disabled and unable to work.  Further, it is quite possible that Dr. Jochem was restricting the claimant from performing his usual work as a painter, which is consistent with my assessment.

Tr. 21.  Given the Court's conclusion that the ALJ was not bound by Dr. Jochem's opinions regarding disability, it was not error for him to speculate that her opinions as to disability were limited to his past work as a painter.  The Court finds no error in the ALJ's assessment of the treating physician evidence.

---

[1]Although not noted by the ALJ, Dr. Jochem expressed reservations about completing the state benefit forms stating, "I do not object to this but completing forms with a different diagnosis each time does not seem appropriate."  Tr. 459.

**B.** **Whether the ALJ failed to develop the record as to Plaintiff's mental impairments**

Plaintiff argues that the ALJ committed legal error by failing to develop the record as to his mental impairments. Clustered under this heading are several loosely related arguments, none of which have merit.

The first argument appears to be that the ALJ erred at step two by concluding that Plaintiff's mental impairments were not severe. According to Plaintiff, in making the determination that the mental impairments are not severe, the ALJ failed to afford proper deference to the opinion of consulting psychiatrist Dr. Charles Mellon, or to consider information in the record such as GAF scores, PTSD screening tests, and information from Plaintiff's family members.

The Court rejects this argument. An allegation of error at step two is not grounds for remand where the ALJ finds other severe impairments that permit the process to proceed to step three. *See Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007) (rejecting argument that ALJ erred in failing to find an impairment severe at step two where the ALJ found other impairments were severe). In this case, although the ALJ found Plaintiff's mental impairments were not severe, he found some of his physical impairments were severe, and the evaluation process thus proceeded to the next step.

Plaintiff also argues that the ALJ disregarded information from several family members. While it is true that the ALJ did not specifically mention the third-party function reports Plaintiff cites, there is nothing in these reports that is inconsistent with the ALJ's conclusions. Plaintiff's brother stated Plaintiff was depressed because he doesn't work, Tr. 144; Plaintiff's mother stated that he follows written and spoken instructions "very well," and that "his mind is okay, it's his body that's not to [sic] well." Tr. 158. She also stated Plaintiff has PTSD. Tr. 160. There is nothing to

7

indicate the ALJ rejected these statements; to the contrary, the ALJ found Plaintiff's medically determinable impairments include depression, PTSD, and anxiety. Tr. 18. The ALJ thus did not err by omitting a discussion of the third-party function reports. *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (ALJ must discuss uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects).

Plaintiff also argues that a number of Tenth Circuit cases require remand for failure to develop the record. The Court disagrees. An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing. *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). The duty is especially strong in the case of an unrepresented claimant. *Carter*, 73 F.3d at 1021. In this case, Plaintiff was represented, did not bring missing medical records to the ALJ's attention, and gave no indication that available medical records were missing or omitted. The Court further notes that Plaintiff was allowed to supplement the record with new evidence before the Appeals Council and presumably could have submitted any additional or missing records at that time, but did not.

Plaintiff next argues that SSR 85-16 obligated the ALJ to re-contact treating sources to obtain information about his psychiatric impairments. The relevant provision of SSR 85-16 states:

> On occasion, the report of a current treating source may disclose other sources of medical evidence not previously reported. If so, these sources should be contacted since it is essential that the medical documentation reflect all available sources, particularly in instances of questionable severity of impairment or inconclusive RFC.

1985 WL 56855, *4 (S.S.A. 1985). In this case, the record does not disclose other sources of medical evidence not previously reported, and Plaintiff does not claim medical evidence of psychiatric impairment has been omitted. Accordingly, the Court finds no basis in SSR 85-16 to

8

remand the case.

Plaintiff also argues that *Blea v. Barnhart* requires remand for failure to develop the record. The Court disagrees.  In *Blea*, the ALJ was faced with an ambiguous onset date and erred by failing to contact a medical advisor help determine the onset date.  *Blea v. Barnhart*, 466 F.3d 903, 911–12 (10th Cir. 2006).  In this case, Plaintiff's onset date is not in dispute, thus there was no reason for the ALJ to contact a medical advisor.

Plaintiff also argues that the agency and the ALJ "failed in the duty to provide sufficient documentation to [consulting examiner Dr. Mellon] as required under SSR 85-16." [Doc. 19 at 11.] Dr. Mellon evaluated Plaintiff on November 29, 2007, and in his report stated:  "PTSD is a possibility, but a diagnosis would require collateral information.  Paranoid personality disorder is also possible." Tr. 391.  Plaintiff asserts that Dr. Mellon had only five pages of VA records, and it "is reasonable to believe had he been provided with adequate records he would have been able to make the diagnostic formulation for PTSD." [Doc. 19 at 10–11.]  The Court rejects this argument. The ALJ subsequently accepted the PTSD diagnosis, finding PTSD was a medically determinable impairment.  Tr. 18.  Thus, it is of no consequence that Dr. Mellon did not make a conclusive diagnosis of PTSD at an earlier stage in the disability determination process.

Plaintiff also argues the ALJ erred by failing to develop the record with respect to Dr. Mellon's mention of a possible personality disorder.  This argument ignores the Psychiatric Review Technique the agency commissioned specifically to assess Plaintiff's alleged mental impairments approximately a week after Dr. Mellon's report.  Tr. 373.  Dr. Walker performed the Psychiatric Review Technique and issued a report on December 28, 2007, concluding that Plaintiff had the medically determinable mental impairments of PTSD, antisocial personality disorder, and a

substance addiction disorder (in reported sustained remission) but that they were not severe.  Tr. 374–87.  The record thus squarely contradicts Plaintiff's claim that the agency failed to develop the record with regard to mental impairments.

### C.      Whether the ALJ erred in his credibility assessment

Plaintiff argues that the ALJ erroneously failed to credit his claims of disabling pain. According to Plaintiff, the ALJ did not follow the *Luna v. Bowen* three-step analysis for evaluating complaints of disabling pain.  The Court disagrees.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation and quotation marks omitted).  Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted).  Under *Luna*, an ALJ faced with a claim of disabling pain is required to consider and determine: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged, *i.e.*, a "loose nexus"; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.  *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir. 1987).  The process "does not require a formalistic factor-by-factor recitation of the evidence" but is satisfied if "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff testified he has disabling pain in his back, shoulders, knees, feet, and wrists.  Tr. 28–29.  In rejecting Plaintiff's claims of disabling pain, the ALJ properly applied the *Luna* analysis.

10

He found there was objective medical evidence of pain producing impairments, and also that the "medically determinable impairments could reasonably be expected to cause his alleged symptoms." Tr. 19. The ALJ concluded, however that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. Tr. 19.

Plaintiff argues that the ALJ's credibility determination was conclusory and failed to fairly discuss the evidence. The Court does not agree. The ALJ acknowledged that the credibility determination must be "based on a consideration of the entire case record." Tr. 19. He also stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 19.

The ALJ observed that Plaintiff had been receiving medical care from the Veterans Administration as far back as the 1980's for a myriad of complaints and noted the following record evidence: (1) despite complaints of right shoulder pain, an MRI of the right shoulder in May 2006 yielded normal results, Tr. 19, 189; (2) Plaintiff reported in February 2007 that steroid injections provided temporary relief from pain, Tr. 20, 199; (3) Despite complaints of disabling low back pain, an MRI of the lumbar spine in May 2007 showed only a mild broad posterior disc bulge at L3/4, a moderate broad posterior disc bulge with foraminal narrowing, no significant canal stenosis at L4/5, and a bone left posterior disc bulge and small posterior central annular tear, with moderate facet arthropathy, and severe left neural foraminal narrowing at L5/S1, Tr. 20, 234.

The ALJ noted that Plaintiff was using a cane, but also discussed Plaintiff's failure to attend recommended physical therapy, and evidence that home strengthening exercises and hydrocodone helped relieve his pain. Tr. 20–21. The ALJ discussed evidence that Plaintiff was independent in taking care of his personal needs, preparing meals, performing household chores, caring for pets, and

shopping, and that he enjoys doing ceramics, painting, going to the movies, the flea market, watching television, and walking around the neighborhood and the Nature Center.  Tr. 21.

Plaintiff lists evidence he claims supports his allegations of disabling pain.  However, in a social security disability case, it is not uncommon to encounter conflicting evidence.  Furthermore, "pain testimony should be consistent with the degree of pain that could be reasonably expected from a determinable medical abnormality."  *Huston*, 838 F.2d at 1129.  The ALJ, as the trier of fact, has the duty to resolve the conflict; the Court does not reweigh the evidence and will not upset the credibility the ALJ's determination where, as here, it is supported by substantial evidence.  *See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (deferring to ALJ's credibility assessment where ALJ properly considered claimant's testimony in light of record evidence).  The ALJ's determination that Plaintiff's claims of disabling pain were not credible is affirmatively linked to substantial evidence.

### D. Whether the ALJ's step five hypothetical questioning of the vocational expert failed to include all Plaintiff's functional limitations

The ALJ found at step four that Plaintiff had the RFC to perform medium work that required no more than occasional climbing of ladders, ropes and scaffolds, no more than occasional reaching overhead with the right upper extremity, and no concentrated exposure to extreme cold or hazardous machinery. Tr. 19.  The ALJ presented this RFC and restrictions to the vocational expert who opined that it would eliminate Plaintiff's prior jobs, but that it was consistent with the job requirements for linen room attendant of which there are 4,100 in New Mexico and 850,000 nationally.  Tr. 28.

Plaintiff argues the job of linen room attendant should have been eliminated because he cannot perform it with his various alleged functional and mental limitations.  "Whenever a

claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991) (citation omitted).  The hypothetical presented to the vocational expert is adequate if it contains all the limitations found to exist by the ALJ.  *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000).

In this case, the hypothetical was adequate because it contained all the limitations the ALJ found to exist.  The ALJ did not err in omitting the limitation that Plaintiff uses a cane, walks slowly, and uses wrist splints, because the ALJ did not did not find these limitations to exist.  His conclusion is supported by substantial evidence.  Although Plaintiff appeared at the hearing using a cane and wearing wrist splints, Tr. 27, other evidence indicates that Plaintiff's gait is normal and that he can ambulate without assistance.  Tr. 265–67, 289, 315, 319, 502, 506, 511.  The record also shows that although he requested the wrist splints from Dr. Jochem, x-rays indicate his wrists are essentially normal, with mild degenerative changes at most.  Tr. 408–11, 467.

The ALJ also was not required to include the limitations Dr. Jochem placed on lifting and standing because neither of these limitations were expected to last twelve months.  *Barnett*, 231 F.3d at 690 (ALJ did not err by failing to present to vocational expert limitations not expected to last twelve months).  Nor was the ALJ required to include a pain limitation in the hypothetical because, as discussed above, the ALJ properly rejected Plaintiff's claims of disabling pain.

The  ALJ also did not err by omitting mental limitations from the hypothetical.  "[W]hen it comes to posing a hypothetical to a vocational expert, if substantial evidence supports an ALJ's finding that a "non-severe" impairment does not create any work-related limitations, the ALJ is not

required to include that impairment in his hypothetical." *Bias v. Astrue*, No. 11-2073, 2012 WL 2362621, *1 (10th Cir. June 22, 2012) (unpublished) (citations omitted).  That is the case here.  The ALJ found that Plaintiff's mental impairments were not severe and did not create any work-related limitations.  He therefore was not required to include the limitations in the hypothetical to the vocational expert.

The ALJ's conclusion that Plaintiff's mental impairments are not severe is supported by substantial evidence.  Severity is measured according to the four "paragraph B" functional criteria: activities of daily living; social functioning, concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).  A rating of "none" or "mild" in the first three areas, and none in the fourth area generally results in a conclusion that the impairment is not severe.  20 C.F.R. § 404.1520a(d)(1).

The ALJ found "mild" limitations in the first three categories, and none in the fourth. Regarding the first category, activities of daily living,  the ALJ cited to evidence that Plaintiff takes care of his personal needs, performs household chores, prepares simple meals, shops for groceries, manages money, drives, spends time drawing, painting, and watching television. Tr. 18.  Regarding the second category, social functioning, the ALJ cited Dr. Mellon's report that although Plaintiff is moderately limited in his ability to interact with supervisors, he is without limitation in his ability to interact with the public and coworkers.  The ALJ noted evidence that Plaintiff socializes with others, shops, goes for walks, to the park, the Nature Center, the mall, movies, and market.  Tr. 18. Regarding the third category, concentration, persistence or pace, the ALJ noted Dr. Mellon's opinion that although Plaintiff is moderately limited in his ability to work without supervision, he is unrestricted in his ability to carry out instructions, attend, and concentrate.  Tr. 18.  In the fourth

14

category, the ALJ found no evidence no episodes of decompensation.  The ALJ thus tied each of his conclusions to evidence in the record.  The Court further notes that the ALJ's findings are consistent with the Psychiatric Review Technique performed by Dr. Walker after Dr. Mellon examined Plaintiff.  Tr. 374–87.

Finally, Plaintiff argues the ALJ erred "by failing to question the VE regarding SSR 00-4p." [Doc. 19 at 19.]  SSR 00-4p requires the ALJ to "obtain a reasonable explanation for any conflicts between occupational evidence provided by [the vocational expert] and information in the Dictionary of Occupational Titles[.]"  SSR 00-4p, 2000 WL 1898704, *1 (Dec. 4, 2000).

Plaintiff correctly notes that the ALJ did not ask the VE whether there was a conflict between his testimony and the Dictionary of Occupational Titles.  However, in his written opinion the ALJ stated "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."  Tr. 22.  Plaintiff does not challenge this conclusion, nor does he claim there was a conflict that required an explanation.  Accordingly, the Court concludes that error, if any, was harmless.  *See Butterick v. Astrue*, 430 F.App'x 665, 668 (10th Cir. 2011) (unpublished) (failure to ask the VE about conflicts pursuant to SSR 00-4p was harmless error where there were no conflicts to explain).

IT IS THEREFORE ORDERED that Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* [Doc. 18] is **DENIED.**

**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**